JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusions that Sebena’s demand for a jury trial was untimely pursuant to Rule 38(b), M.R.Civ.P., and that the District Court did not abuse its discretion when it declined to order a jury trial pursuant to Rule 39(b), M.R.Civ.P.
I dissent from the majority’s conclusion that Sebena failed to prove damages.
The majority seems to conclude that because Sebena has no specific record of how many room rentals were directly attributable to his listing by AAA, and because there might have been other factors which also contributed to a decrease in his rental rate, he has not, as a matter of law, proven damages. However, in arriving at its conclusion, the majority has misapplied our decision in Stensvad v. Miners & Merchants Bank of Roundup (1982), 196 Mont. 193, 640 P.2d 1303. Pursuant to Stensvad, it is not the amount of damages which must be proven with certainty. It is the fact that damages have been sustained which must be proven with reasonable certainty.
In this case, to conclude that there were no damages from being delisted by AAA is to ignore all of AAA’s admissions in the form of promotional materials suggesting there is an economic advantage to those who are listed. For example, Exhibit 77 admitted by the District Court includes testimonials from others listed by AAA who state that “[a] 90-day tracking period revealed that 50% of our business came from the AAA Tourbook” and that “[w]e feel that our AAA Tourbook ad accounts for about 50% of our total business.”
Gene DeFrance is the former employee of the Montana Automobile Association who first approached Sebena about a AAA listing. He promoted the listing by telling Sebena how many members AAA had and how reliant they were on the tour book for information about accommodations. He testified that it was economically advantageous to be listed in the book.
Lisa Sebena is the daughter of William Sebena, and at the time of trial had been the manager of the Lewis and Clark Motel for eight years. In that capacity, she worked in all aspects of the business and was familiar with the motel’s volume of business, both while it was listed with AAA and after it was delisted. Lisa testified that prior to the delisting by AAA, close to sixty percent of the motel’s business *312 resulted from its inclusion in AAA’s tour book. She testified that from her personal observations while working at the motel, there has been a loss of business directly attributable to having the motel removed from the tour book. She testified that many of the people who came to the motel based on a AAA listing walked in off the street, and that for them there would be no record of the fact that they came to the motel because of AAA. However, she also testified that because on occasion potential guests called and asked for the AAA rate and were told that they were no longer affiliated with AAA, she was able to definitely state that they lost business by the loss of their affiliation.
William Sebena was asked the following questions and gave the following answers:
Q. Have you made an observation or a study of your business before when you were AAA affiliated, and your three and four-diamond listings in the tour book, as compared to what you’re left with now? A. As compared to after we were deleted?
Q. Right.
A. Yes.
Q. And what have been your observations with respect to that?
Q. Tell me about your observations. What have you observed, what have you done to make these observations about your lessening of business?
A. We went to our accounting records and compared figures.
Q. And what did you discover in making your comparison of before you were terminated from AAA and afterwards?
A. I discovered that we were, even though we, in 1994, January and February, we are still listed in the current book, that we had a considerable loss in room rentals by the number of 1,065 ....
Q. ... Can you compute a yearly loss for the year in 1994?
A. We averaged the cost of the 1993 rooms.
Q. What was that average?
A. We averaged $48 and some cents throughout the year.
Q. You, in fact, figured $48.36; is that correct?
A. Yes. And then we multiplied it by those 1,065 rooms and arrived at a quite accurate figure at a loss.
*313 Q. In using those figures, can you tell us the amount of money that you lost during the 1994 calendar year?
A. $48.36?
Q. Right.
A. $51,503.40.
Steve Hamilton, who is a certified public accountant and has practiced in Montana since 1978, and was allowed by the District Court to testify as an expert witness, testified that he had been Sebena’s accountant for seven or eight years at the time of trial. He testified that the method used by Sebena to calculate his annual loss from being delisted by AAA was reasonable in light of what he knew about the business’s prior history and trends for other businesses in the Bozeman area. He also testified that as of 1993, Sebena had run a profitable business and that it would not have been unreasonable to expect him to continue operating the business in that fashion for an additional twenty years.
If there was no economic advantage to being listed, then how could AAA charge, and why would Sebena and thousands of others pay to be listed? If there was an economic advantage to being listed, then there had to be an economic disadvantage from being delisted.
In sum, it was not speculative that damages had been sustained as a result of the fact that the Lewis and Clark Motel was excluded from AAA’s Tourbook. Pursuant to our previous decisions, once the probability of damage has been shown, the loss of profits need only be computed on the basis of the best evidence available. Sebena provided the best evidence available and the District Court had an obligation to arrive at some calculation of damages based on that evidence.
Because I conclude that the District Court erred in its finding that no damages were sustained, I conclude that the District Court also erred when it failed to address the plaintiff’s specific claim that the defendant breached an express contract with the plaintiff by excluding his business from the AAA Tourbook, in spite of his alleged efforts to improve the premises to the extent of his financial ability. Rule 52(a), M.R.Civ.P, provides in part as follows: “In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.”
In this case, the court made no finding that a contract did or did not exist, and therefore made no finding which resolved Sebena’s *314 allegation that AAA had breached its contract with him. The District Court did conclude that plaintiff failed to prove that AAA had acted arbitrarily, capriciously, or fraudulently when it delisted the motel, and further concluded that plaintiff had not proven interference with a prospective business advantage, but made no conclusions regarding the existence of or breach of a contract between the parties.
Instead of entering findings or conclusions related to Sebena’s contract claim, the District Court simply concluded that: “Assuming AAA did do something wrong, Plaintiff has failed to show that he suffered any damages.”
For the reasons, and based on the facts set forth above, I conclude that plaintiff did offer proof of damages. The District Court’s responsibility was to determine whether there had been a breach of contract and the amount of damages that had been proven.
For these reasons, I dissent from the majority’s conclusion that no damages were proven. I would reverse the judgment of the District Court and remand for findings and conclusions regarding Sebena’s contract claim. If the District Court found and concluded that a contract existed between the parties and had been breached by AAA, then I conclude the District Court should have arrived at a calculation of damages sustained by Sebena as a result of AAA’s contractual breach.